# United States Court of Appeals for the Federal Circuit

2004-1440, 2005-1265, -1266, 2006-1374

ENTEGRIS, INC.
(formerly known as Mykrolis Corporation),

Plaintiff-Cross Appellant,

v.

PALL CORPORATION,

Defendant-Appellant.

John T. Montgomery, Ropes & Gray, LLP, of Boston, Massachusetts, argued for plaintiff-cross appellant. With him on the brief was Dalila Argaez Wendlandt. Of counsel on the brief were Susan G.L. Glovsky, John L. DuPré, and Kevin T. Shaughnessy, Hamilton, Brook, Smith & Reynolds, P.C., of Concord, Massachusetts.

H. Michael Hartmann, Leydig, Voit & Mayer, LTD., of Chicago, Illinois, argued for defendant-appellant. With him on the brief were Mark E. Phelps and Jeremy C. Lowe.

Appealed from: United States District Court for the District of Massachusetts

Judge George A. O'Toole, Jr.

# United States Court of Appeals for the Federal Circuit

2004-1440, 2005-1265, 2005-1266, 2006-1374

ENTEGRIS, INC.
(formerly known as Mykrolis Corporation),

Plaintiff-Cross-Appellant,

v.

PALL CORPORATION,

Defendant-Appellant.

_____

DECIDED: June 13, 2007

_____

Before GAJARSA, LINN, and MOORE, <u>Circuit Judges</u>.

MOORE, <u>Circuit Judge</u>.

Mykrolis Corporation ("Mykrolis")[1] sued Pall Corporation ("Pall") in the United States District Court for the District of Massachusetts, asserting infringement of U.S. Patent Nos. 6,068,770 (the '770 patent) and 6,378,907 (the '907 patent) by certain fluid filtering devices manufactured and sold by Pall. The district court granted Mykrolis' motion for a preliminary injunction. <u>Mykrolis Corp. v. Pall Corp.</u>, No. 03-10392, 2004 U.S. Dist. LEXIS 7523 (D. Mass. Apr. 30, 2004) (preliminary injunction order). After subsequent motions by the parties, the court held Pall in contempt for violating the

---

[1] Mykrolis Corporation is now known as Entegris, Inc. However, in order to maintain consistency with the prior decisions by the district court and the briefings by the parties in this case, we will continue to refer to the company herein as Mykrolis.

injunction but, in the same order, dissolved the injunction based, at least in part, on a newly-raised invalidity challenge to the asserted patents. Mykrolis Corp. v. Pall Corp., No. 03-10392, 2005 U.S. Dist. LEXIS 518, *11-12 (D. Mass. Jan. 12, 2005) (contempt order). Pall appeals the district court's finding that Pall was in contempt. We dismiss that appeal for lack of jurisdiction. Mykrolis cross-appeals the court's order dissolving the preliminary injunction. Because the district court did not abuse its discretion in dissolving the preliminary injunction, we affirm that decision.

BACKGROUND

Plaintiff-cross appellant Mykrolis and defendant-appellant Pall are competitors in the industry of filtration systems for semiconductor manufacturing. Mykrolis is the assignee of the '770 and '907 patents. The '770 and '907 patents disclose fluid filtration systems having a filter module that can be simply inserted into and held in fluid tight connection with a manifold structure. In March 2003, Mykrolis initiated the present patent infringement lawsuit against Pall and simultaneously moved for a preliminary injunction with respect to Pall's accused PhotoKleen™ EZD-2 filter assembly product. Mykrolis moved for a preliminary injunction on the ground that Pall's EZD-2 assembly product infringed at least claim 3 of the '770 patent and claim 1 of the '907 patent.

At the close of an expedited discovery period following the injunction request, the court held a five-day evidentiary and claim construction hearing. On April 30, 2004, the district court issued a Memorandum and Order, setting forth its claim construction with respect to claim 3 of the '770 patent and claim 1 of the '907 patent. Mykrolis Corp., No. 03-10392, 2004 U.S. Dist. LEXIS 7523, at *8-21. The Order also granted Mykrolis a preliminary injunction, enjoining Pall from "making, using, selling, or offering to sell . . .

the product now being sold under the name PhotoKleen™ EZD-2 filter Assembly, or any colorable imitation thereof." Id. at *34.[2]

Pall thereafter ceased sales of the EZD-2 filter assembly and began selling a modified assembly. The new design (referred to herein as the "EZD-3" or the "slotted EZD-3" assembly) eliminated a tab on the bottom of the filter module component that previously engaged a slot in the manifold to provide proper alignment of the components. Pall filed a motion seeking clarification of the scope of the preliminary injunction with respect to the new slotted EZD-3 assemblies, but Pall withdrew that motion as "moot" because it concluded that its modified filter assemblies "are without question not the EZD-2 filter assemblies . . . nor colorable imitations thereof." Instead, Pall amended its earlier-filed declaratory judgment complaint seeking a declaration of noninfringement with respect to the new design. Mykrolis moved the district court to hold Pall in contempt for violating the preliminary injunction order by its sales of the EZD-3 assembly and requested damages that Mykrolis allegedly suffered because of Pall's violations of the preliminary injunction order. The district court held a hearing on July 14, 2004 on Mykrolis' contempt motion and took the matter under advisement.

In August 2004, before the district court ruled on the contempt motion, two events occurred. First, Pall again modified the design of its accused products, this time removing the slot on the bottom plate of the manifold component's platform, creating the "slotless EZD-3" assembly. Pall ceased distributing the slotted EZD-3 assembly in favor

---

[2]    Pall filed a notice of appeal, challenging the district court's granting of the preliminary injunction. Pall decided not to pursue its original appeal of the district court's preliminary injunction order, docketed by this court as No. 2004-1440, determining that the appeal was moot in light of subsequent events as discussed herein.

2004-1440, 2005-1265, -1266,                    3
2006-1374

of the slotless EZD-3 assembly. Second, Pall moved to dissolve the preliminary injunction on the basis of two newly-discovered prior art references assigned to Sumitomo Bakelite Co., Ltd. (the Sumitomo references), which Pall argued raised a substantial question regarding the validity of the asserted patent claims.

On January 12, 2005, the district court issued an order holding Pall in contempt of the court's preliminary injunction order for its sales of the slotted EZD-3 assembly. Mykrolis Corp., No. 03-10392, 2005 U.S. Dist. LEXIS 518, at *11. The district court assessed a $210,000 fine against Pall for Mykrolis' attorneys' fees and costs in connection with the contempt. The January 12 contempt order also granted Pall's motion to dissolve the preliminary injunction. Id. at *12. The district court concluded that "Pall has cast enough doubt on the validity of the Mykrolis patents with respect to the Sumitomo references that it can no longer be said that Pall's invalidity defenses lack substantial merit." Id.

Both parties now appeal the court's January 12 order. Pall appeals the court's finding of contempt; however, Pall does not contest the amount of the assessed fine. Mykrolis cross-appeals the district court's decision to dissolve the preliminary injunction.

ANALYSIS

I.

"It is axiomatic that the initial inquiry in any appeal is whether the court to which appeal is taken has jurisdiction to hear the appeal." Woodard v. Sage Prods., 818 F.2d 841, 844 (Fed. Cir. 1987) (en banc). This court is thus obligated to consider whether it has jurisdiction even when the issue is not raised by either party. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); Pandrol USA, LP v. Airboss Ry.

<u>Prods., Inc.</u>, 320 F.3d 1354, 1362 (Fed. Cir. 2003) (citing <u>View Eng'g, Inc. v. Robotic</u> <u>Vision Sys., Inc.</u>, 115 F.3d 962, 963 (Fed. Cir. 1997)).  We apply Federal Circuit law to issues of our own appellate jurisdiction.  <u>Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.</u>, 476 F.3d 1329, 1330 (Fed. Cir. 2007); <u>Woodard</u>, 818 F.2d at 844.

A.

Pall contends that this court has jurisdiction over its appeal of the contempt order as an interlocutory appeal under 28 U.S.C. § 1292(c)(1).  Section 1292(c)(1) provides that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction (1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title."  28 U.S.C. § 1292(c)(1). section 1292(a) provides that the courts of appeals have jurisdiction over "interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."[3]  The contempt order which Pall is appealing does none of these.

The Supreme Court has stated, in general, that Section 1292(a) should be narrowly construed:

> Because § 1292(a)(1) was intended to carve out only a limited exception
> to the final-judgment rule, we have construed the statute narrowly to
> ensure that appeal as of right under § 1292(a)(1) will be available only in
> circumstances where an appeal will further the statutory purpose of
> "permit[ting] litigants to effectually challenge interlocutory orders of
> serious, perhaps irreparable, consequence."  Unless a litigant can show

---

[3]      28 U.S.C. § 1292(b) provides for interlocutory appeals that are certified by the district court as containing "a controlling question of law."  That section is inapplicable to this appeal because the district court made no such certification.

that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.

Carson v. Am. Brands, Inc., 450 U.S. 79, 84 (1981) (internal citations omitted). Since Carson, at least one Supreme Court case acknowledged that the "serious, perhaps irreparable consequence" standard set forth in Carson is intended to apply to situations like this one, where a court order does not on its face modify, grant, refuse, dissolve, or continue an injunction but where it is alleged to have the same effective consequence as an interlocutory appeal in section 1292(a). Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 287-88 (1988) ("Section 1292(a)(1) will, of course, continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'").

In this case, Pall argues that the contempt order is an appealable interlocutory order that falls within section 1292(a)(1) because "in order to find Pall in contempt, the district court continued or modified the injunction to include the products developed after and in response to the district court's injunction." The district court's contempt order does not, on its face, modify or continue an injunction, but this does not end the inquiry. Where a district court interlocutory order effectively amounts to a modification, grant, refusal, dissolution, or continuation of an injunction, this court may have jurisdiction over an appeal of that order. See Eli Lilly & Co. v. Medtronic, Inc., 915 F.2d 670, 673 (Fed. Cir. 1990) (stating "the order from which appeal has been taken not only found Medtronic in contempt but also put into place injunctive relief supplementary to the injunction found to have been violated and, therefore, constitutes an order within the

scope of section 1292(a)(1)"); see also Gregory v. Depte, 896 F.2d 31, 34 (3d Cir. 1990) (agreeing that "the usual rule is that an interlocutory civil contempt is not appealable," but finding that the sanction issued by the district court "amounts to an independent preliminary injunction and thus is appealable at this stage") (internal citations omitted); Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc., 849 F.2d 1481, 1486 (D.C. Cir. 1988) (finding jurisdiction over the civil contempt order where it "necessarily modified the July injunction or issued a completely new injunction"). Thus, we must consider whether the district court's contempt order effectively amounts to either a modification or continuation of the preliminary injunction, as Pall contends. We address each of these possibilities in turn.

There is a difference between a district court order that modifies an injunction and one that clarifies or interprets an injunction. Although "the distinction between an order interpreting an injunction and one modifying an injunction is not always clear," the distinction defines a boundary of appellate jurisdiction under section 1292. Motorola, Inc. v. Computer Displays Int'l, Inc., 739 F.2d 1149, 1155 (7th Cir. 1984). Here, the district court clearly stated that it was not modifying the original preliminary injunction when it found that Pall's sales of the slotted EZD-3 assembly violated the injunction. Mykrolis Corp., No. 03-10392, 2005 U.S. Dist. LEXIS 518, at *11 (stating "the April 30, 2004 preliminary injunction applies to . . . the EZD-3 with the slot") (internal parenthetical omitted). The district court held that the slotted EZD-3 assembly was a "colorable imitation" of the EZD-2 assembly, which was expressly covered by the original preliminary injunction. Mykrolis Corp., No. 03-10392, 2004 U.S. Dist. LEXIS 7523, at *35 (stating that Pall is "enjoined from making, using, selling, or offering to sell

within the United States . . . the product now being sold under the name PhotoKleen™ EZD-2 Filter Assembly, or any colorable imitation thereof"). We conclude that the contempt order is merely an interpretation of the preliminary injunction and not a modification of the injunction within the meaning of section 1292(a). Accordingly, no jurisdiction for Pall's appeal exists on this basis.

We next consider whether the contempt order "continued" an injunction. To characterize an interlocutory order as "continuing" an injunction under section 1292(a), the order must effectively prolong or extend an existing injunction. See Robert Morse, When Does Interlocutory Order of Federal District Court, Concerning Previously Issued Injunction, Modify or Continue Such Injunction So As To Be Appealable Under 28 U.S.C.A. § 1292(a)(1), 106 A.L.R. Fed. 500, § 2a (1992). The Ninth Circuit explained that "an order that 'continues' an injunction under [section 1292] is an order that extends the duration of the injunction that would otherwise have dissolved by its own terms." United States v. Oakland Cannabis Buyers' Coop., 190 F.3d 1109, 1112 (9th Cir. 1999). Similarly, the First Circuit explained that for an interlocutory order to be classified as one that "continues" an injunction, the order "must have a direct and demonstrable effect on the duration of a previously-issued injunction. In other words, the later order must extend or prolong the restraint." Sierra Club v. Marsh, 907 F.2d 210, 213-14 (1st Cir. 1990). We follow these rules from the Ninth and First Circuits in this case, not because we are bound to, but because we find them persuasive, and thus, we adopt them as Federal Circuit law.

In this case, the preliminary injunction stated that its duration was "until further order of this Court." Mykrolis Corp., No. 03-10392, 2004 U.S. Dist. LEXIS 7523, at *35.

The contempt order did not prolong, extend, or in any other way impact the duration of the preliminary injunction. Accordingly, we hold that the contempt order cannot be characterized as "continuing" the preliminary injunction within the meaning of section 1292.

Because the contempt order does not fall into any of the enumerated categories of appealable interlocutory orders in 28 U.S.C. § 1292(a), and because Pall has not alleged that it would face "irreparable consequence" if it was unable to appeal the contempt order at this time, see Carson, 450 U.S. at 84, we hold that 28 U.S.C. § 1292(c) does not provide this court with jurisdiction over Pall's appeal.

B.

Pall also contends, in the alternative, that this court has jurisdiction over its appeal of the contempt order under 28 U.S.C. § 1295(a). That statute provides, in relevant part, that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction (1) of an appeal from a final decision of a district court of the United States" for every patent dispute arising under 28 U.S.C. § 1338. 28 U.S.C. § 1295(a) (emphasis added). Under this rule, known as the final judgment rule, parties may appeal only "final decision[s] of a district court." Nystrom v. TREX Co., 339 F.3d 1347, 1350 (Fed. Cir. 2003) (citing 28 U.S.C. § 1295(a) (2000)). In applying this rule, the "Supreme Court defined a final judgment as a decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. (citing Catlin v. United States, 324 U.S. 229, 233 (1945)).

In this case, Pall argues that the contempt order is final within the meaning of section 1295(a) because a fine has been assessed against Pall. The Supreme Court,

however, has rejected the notion that a civil contempt order is final, stating "we deem it settled that an order punishing for contempt made in the progress of the case, when not in the nature of an order in a criminal proceeding, is regarded as interlocutory and to be reviewed only upon appeal from a final decree in the case." Doyle v. London Guar. & Accident Co., 204 U.S. 599, 603 (1907). In Doyle, the Supreme Court was considering whether the Third Circuit had appellate jurisdiction to hear an appeal from a district court's contempt judgment against two defendants, ordering the two defendants to pay a fine or face imprisonment. Id. at 601-02. The Court found that the contempt was civil, not criminal in nature because the purpose of the contempt was not "vindication of the authority and dignity of the court . . . [but rather] to enforce the rights of private parties, to compel obedience to orders and decrees made to enforce their rights and to give them a remedy to which the court deems them entitled." Id. at 605. Due to the civil nature of the contempt, the Court held "the Circuit Court of Appeals has no jurisdiction to review the judgment set forth." Id. at 608. Similarly, in Fox v. Capital Co., 299 U.S. 105, 108 (1936), the Supreme Court addressed whether an appellate court properly dismissed an appeal of a contempt order, where the contempt issued to punish a party for failing to participate in discovery and the penalty included a "fine of $10,000 which was imposed unconditionally." In holding that the contempt order was not final, the Court stated that "[d]espite the contempt or the penalties therefor, the [underlying] proceeding may continue until its aim has been achieved." Id. at 107.

The Supreme Court precedent dictates that "civil contempts arising during the trial of related litigation are not appealable if adjudged against a party litigant, although such contempts are reviewable on appeal from the final judgment in the related

litigation."  4 Am. Jur. 2d <u>Appellate Review</u> § 217 (2006); <u>see also</u> 15B Charles Alan Wright and Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3517.  The Supreme Court's rule in <u>Fox</u> and <u>Doyle</u> has been widely followed by other circuits.  <u>See</u> <u>Coca-Cola Co. v. Purdy</u>, 382 F.3d 774, 792 (8th Cir. 2004) ("The imposition of sanctions for civil contempt during the course of a pending action is an appealable final action only if the person held in contempt is not a party to the pending action."); <u>McAlpin v. Lexington 76 Auto Truck Stop, Inc.</u>, 229 F.3d 491, 500 (6th Cir. 2000) ("[A] judgment of civil contempt is not itself a final decree, and therefore is not [itself] appealable in the absence of a final judgment.") (internal citations omitted); <u>Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.</u>, 625 F.2d 881, 884 (9th Cir. 1980) ("In summary, the order was for civil contempt and as such it was an interlocutory order and appealable as part of any appeal from the final judgment."); <u>Cromaglass Corp. v. Ferm</u>, 500 F.2d 601, 604 (3d Cir. 1974) ("[W]ith respect to a party to the litigation, an order holding a party in civil contempt was in fact an interlocutory order and was not appealable except on final judgment."); <u>Int'l Bus. Machs. Corp. v. United States</u>, 493 F.2d 112, 114-15 (2d Cir. 1973); <u>Hodgson v. Mahoney</u>, 460 F.2d 326, 328 (1st Cir. 1972) (calling a civil contempt order assessing fines and incarceration "unappealable" before final judgment).

Pall argues that this rule is not applied in the Federal Circuit, and it references <u>Seiko Epson Corp. v. Nu-Kote International, Inc.</u>, 190 F.3d 1360, 1369 (Fed. Cir. 1999). In <u>Seiko</u>, the plaintiffs charged defendant Nu-Kote with patent infringement for manufacturing certain ink cartridges, for which the court preliminarily enjoined Nu-Kote. The plaintiffs amended their complaint to add further allegations of patent infringement,

which included the addition of a new defendant, new Nu-Kote products, and additional patents. Plaintiffs also requested that the court modify the preliminary injunction to encompass these new infringement allegations. The court ruled that several of the plaintiffs' patents were either invalid or unenforceable, and therefore, it dissolved the preliminary injunction with respect to these patents. The court amended the preliminary injunction to include one of the newly asserted patents but refused to expand the injunction to cover plaintiffs' design patent, finding that it was not likely plaintiffs would succeed on the merits of that infringement claim. The district court also found defendants in contempt for continuing to manufacture the alleged infringing ink cartridges as well as the newly added models, in violation of the preliminary injunction. Both parties appealed various aspects of the court's August 11th ruling, including the contempt order. Id. at 1362.

On appeal, the plaintiffs argued that this court did not have jurisdiction to review the contempt citation because "orders of civil contempt are interlocutory and are not appealable before entry of final judgment." Id. at 1369. This court disagreed, finding that it did have jurisdiction over the appeal of the contempt order, but it did not indicate under what statutory section that jurisdiction arose. Although the court noted the "finality" of the contempt order, id., we do not read Seiko for the proposition that, under Federal Circuit law,[4] contempt orders are "final decision[s]" under section 1295(a), as

---

[4] The court in Seiko did not indicate whether it was applying Federal Circuit or regional circuit law to the jurisdictional inquiry. In holding that it did have jurisdiction, the panel cited three Ninth Circuit cases. 190 F.3d at 1369 (citing United States v. Westinghouse Elec. Corp., 648 F.2d 642, 651 (9th Cir. 1981); Hoffman v. Beer Drivers & Salesmen's Local Union No. 888, 536 F.2d 1268, 1273 (9th Cir. 1976); and Blalock Eddy Ranch v. MCI Telecomms. Corp., 982 F.2d 371, 373 (9th Cir. 1992)). According to these Ninth Circuit cases, a contempt order is deemed "final" when an assessed fine

suggested by Pall. To do so would directly conflict with the Supreme Court's Doyle and Fox cases, which hold that civil contempt orders are not final judgments, even when a fine is assessed. See Doyle, 204 U.S. at 603; Fox, 299 U.S. at 107-09. Rather, this court had jurisdiction in Seiko to review the contempt order because it effectively modified the injunction in that it expanded the scope of products beyond those enjoined by the terms of the original injunction. See Seiko, 190 F.3d at 1371-72 (limiting relief for contempt for infringement to the products originally enjoined). In contrast, the contempt order at issue in this appeal did not expand the scope of the preliminary injunction. Instead, as explained above, the order merely interpreted the breadth of the original injunction, finding that Pall's slotted EZD-3 assemblies fell within the express terms of the originally enjoined products.

Based on the foregoing, we hold that the final judgment rule is not satisfied in this case. By holding Pall in contempt for violating the preliminary injunction, the district court's order did not "end[] the litigation on the merits." Nystrom, 339 F.3d at 1350 (citing Catlin v. United States, 324 U.S. 229, 233 (1945)). To the contrary, the underlying litigation is still ongoing. Therefore, we hold that this court does not have jurisdiction over Pall's appeal pursuant to 28 U.S.C. § 1295(a).

## C.

Finally, Pall argues that this court may properly exercise pendent or ancillary jurisdiction over its appeal of the contempt order because the court has jurisdiction over Mykrolis' cross-appeal of the dissolution of the preliminary injunction. In appropriate

---

is ordered to be paid. But see Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc., 625 F.2d 881, 884 (9th Cir. 1980) (stating "the order was for civil contempt and as such it was an interlocutory order and appealable as part of any appeal from the final judgment").

circumstances, pendent jurisdiction provides an appellate court with the discretion to review an interlocutory order that would not otherwise be reviewable in connection with review of a properly appealable order. See Intermedics Infusaid, Inc. v. Regents of Univ. of Minn., 804 F.2d 129, 134 (Fed. Cir. 1986).

It is appropriate for an appellate court to exercise pendent jurisdiction over an appeal where that appeal is "inextricably intertwined" with another appeal over which it does have jurisdiction such that it is necessary to review both "to ensure meaningful review." Clinton v. Jones, 520 U.S. 681, 707 n.41 (1997) (quoting Swint v. Chambers County Comm'n, 514 U.S. 35, 51 (1995)); Swint, 514 U.S. at 51 (citing Kanji, The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context, 100 YALE L.J. 511, 530 (1990), as stating "[o]nly where essential to the resolution of properly appealed collateral orders should courts extend their. . . jurisdiction to rulings that would not otherwise qualify for expedited consideration") (emphasis added); see also Papineau v. Parmley, 465 F.3d 46, 64-65 (2d Cir. 2006) ("Pendent appellate jurisdiction is a procedural device that rarely should be used because of the danger of abuse and that accordingly, we must exercise such jurisdiction only in exceptional circumstances.") (internal citations and quotations omitted).

This court used the "inextricably intertwined" standard when determining that it should exercise pendent jurisdiction to review a district court's grant of summary judgment of invalidity while also reviewing the court's interlocutory order denying a preliminary injunction. Helifix, Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345 (Fed. Cir. 2000). The court in Helifix found pendent jurisdiction was appropriate because the district court based its denial of preliminary injunctive relief on its summary judgment

ruling in favor of Blok-Lok.  Id.  In Helifix, reviewing the appealable order required reviewing the otherwise unreviewable decision, thus making the decisions "inextricably intertwined."  Id.

In this case, Pall's appeal turns on whether the district court properly determined that the slotted EZD-3 assembly was a "colorable imitation" of the enjoined EZD-2 assembly.[5]  Mykrolis' cross-appeal questions whether the court properly dissolved the injunction in light of invalidity concerns with respect to the asserted claims raised by the Sumitomo references.  Consideration of the issues in the cross-appeal does not impact, let alone resolve, the issues in Pall's appeal.  Accordingly, we find that Pall's appeal of the contempt order is not "inextricably intertwined" with Mykrolis' cross-appeal of the dissolution of the preliminary injunction.

Pall cited additional cases in which courts permitted pendent jurisdiction over unappealable issues because those issues were inextricably intertwined with appealable issues.  See Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1461 (Fed. Cir. 1990) (holding that appeal of the joinder of two defendants was inextricably intertwined with appeal of an injunction prohibiting suit against the defendants in another jurisdiction because the latter appeal involved factors pertinent to the former); Diamontiney v. Borg, 918 F.2d 793, 797 (9th Cir. 1990) (holding a civil contempt order inextricably intertwined with an underlying preliminary injunction because the review considerations were closely related); Latrobe Steel Co. v. United Steelworkers of Am., 545 F.2d 1336, 1340

---

[5]     Pall also challenges the propriety of the district court's grant of contempt on a preliminary injunction that it simultaneously dissolved.  Because we conclude that we do not have jurisdiction over Pall's appeal, we do not reach the merits of this argument. This argument, however, would not necessarily be resolved by determining whether the court properly dissolved the injunction.

(3d Cir. 1976) (allowing interlocutory appeal of a contempt order where the review of the contempt relief was impacted by the court's review of the underlying preliminary injunction).[6] Contrary to Pall's claims, each of these cases is distinguishable from this case because of the close relation of the appealed issues. Here, as explained above, there is no overlap or impact between the issues on appeal. Accordingly, we find that exercising pendent jurisdiction is not appropriate with respect to Pall's appeal.

Nor do we find exercising pendent jurisdiction appropriate based on the fact that the district court's decision on the contempt motion is in the same order that dissolved the preliminary injunction. Our precedent acknowledges that in some circumstances, this court can review an "entire order, and not simply the propriety of the injunctive relief." King Instrument Corp. v. Otari Corp., 814 F.2d 1560, 1562 (Fed. Cir. 1987). For example, when an appellate court reviews a district court's decision to dissolve an injunction, it should consider all of the "issues that bear on the district court's decision to dissolve the injunction." Max v. McLaughlin, 376 F.3d 344, 352 (5th Cir. 2004). Yet appellate review is limited to "only those issues," id., and here, the district court's decision to dissolve the injunction was unrelated to its decision holding Pall in contempt. Presenting a ruling that is not otherwise appealable in the same physical document as an order dissolving an injunction does not make the unappealable ruling reviewable by this court under 28 U.S.C. § 1292.

Having thus concluded that we do not have jurisdiction over Pall's appeal of the contempt order under 28 U.S.C. § 1292 or § 1295 and that exercising pendent jurisdiction is not appropriate because the contempt order is not "inextricably

---

[6] In contrast to Diamontiney and Latrobe, the district court's granting of the preliminary injunction is not being appealed.

intertwined" with the remaining appealed issues, we dismiss Pall's appeal for lack of jurisdiction.

II.

Mykrolis appeals the district court's decision to dissolve the preliminary injunction. We have jurisdiction over the appeal under 28 U.S.C. § 1292(a)(1), (c)(1).

A.

Before addressing the merits of the appeal, Pall argues that this court lacks jurisdiction to review the district court's order because Mykrolis failed to challenge a basis upon which the district court dissolved the injunction. See FilmTec Corp. v. Hydranautics, 67 F.3d 931, 937 (Fed. Cir. 1995) ("[I]t is this court's duty to sustain the judgment if there are other grounds upon which it can be upheld."). Pall contends that the district court dissolved the injunction on two independent grounds: (1) the substantial question of invalidity raised by the Sumitomo references and (2) the substantial question of noninfringement raised by Pall's new slotless EZD-3 assembly, the only relevant product that it was selling when the injunction was dissolved. Mykrolis acknowledges that the district court did address the alleged infringement of the slotless EZD-3 assembly in the portion of its order involving the dissolution of the preliminary injunction. Mykrolis contends, however, that this mention of the "substantial issue of infringement" raised by the slotless EZD-3 was an inadvertent carry-over from the court's analysis in the contempt portion of its order.[7]

---

[7]    Before holding a party in contempt based on a redesigned product, the court must determine whether "substantial open issues of infringement are raised by the new device," such that the contempt proceeding is inappropriate for addressing the redesigned device. Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1349 (Fed. Cir. 1998). In this case, the district court performed that inquiry

Although we acknowledge that there is some ambiguity in the district court's order dissolving the preliminary injunction, we determine that the "substantial questions of infringement" raised by Pall's new slotless EZD-3 assembly was not an independent ground upon which the court dissolved the injunction. Rather, we conclude that the court addressed the alleged infringement of the slotless EZD-3 assembly because this went to the issue of whether Mykrolis would suffer irreparable harm if the injunction was not maintained, another factor in the injunction analysis. This is precisely the manner in which the slotless EZD-3 infringement issue was briefed by the parties to the district court. In its brief, Pall contended that Mykrolis could not demonstrate a reasonable likelihood of success on the merits based solely on the validity concerns involving the Sumitomo references. Pall argued that because Mykrolis could not make a "strong showing of likelihood of success on the issue of validity, Mykrolis thus maintains the full burden of presenting clear evidence that it would suffer irreparable harm absent preliminary relief." Pall argued that Mykrolis could not show irreparable harm because "any sales that Mykrolis is arguably losing to Pall at this point are being lost to non-infringing" slotless EZD-3 devices.

Furthermore, Pall's contention that the district court would dissolve the preliminary injunction on the "independent" ground that Pall has ceased production of the expressly enjoined EZD-2 assemblies is illogical. If Pall has, as it claims, ceased making and selling infringing products, it would not be harmed by the preliminary injunction, and therefore, the district court would have no impetus for dissolving the

in the first part of its order and determined that the contempt proceeding was not appropriate for addressing the slotless EZD-3 device. See Mykrolis Corp., No. 03-10392, 2005 U.S. Dist. LEXIS 518, at *12 ("These questions are 'substantial' enough to be more properly addressed outside the context of the issue of contempt.").

injunction. Moreover, if a court was to dissolve a preliminary injunction solely on the ground that the defendant was no longer producing an infringing product, there would be no prohibition against the defendant reverting to production of the originally enjoined products. The patentee would be forced to move again for an injunction on a product that the court already determined is likely to infringe. That approach would waste judicial resources and put unnecessary burden on the patentee.

For these reasons, we conclude that the district court did not, as proposed by Pall, dissolve the injunction on the independent ground that Pall is currently producing only the slotted EZD-3 assemblies. Mykrolis has properly challenged the district court's primary rationale for dissolving the preliminary injunction, i.e., the validity issues raised by the Sumitomo references. We turn next to the merits of that rationale.

### B.

A patent holder seeking a preliminary injunction bears the burden of establishing a likelihood of success on the merits with respect to the patent's validity. Helifix, 208 F.3d at 1351. If the alleged infringer raises a "substantial question" regarding invalidity, i.e., asserts an invalidity defense that the patentee cannot prove "lacks substantial merit," the preliminary injunction should not issue. Genentech, Inc. v. Novo Nordisk, 108 F.3d 1361, 1364 (Fed. Cir. 1997). It is important to note that "[t]he showing of a substantial question as to invalidity . . . requires less proof than the clear and convincing showing necessary to establish invalidity itself" at trial. Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001).

In order to prevail in this appeal, Mykrolis must demonstrate that the district court abused its discretion in granting Pall's motion to dissolve the preliminary injunction.

Canon Computer Sys. v. Nu-Kote Int'l, 134 F.3d 1085, 1087-88 (Fed. Cir. 1998). "An abuse of discretion may be established by showing that the district court made a clear error of judgment, or based its decision on an erroneous legal conclusion or clearly erroneous factual findings." Id. at 1088.

Mykrolis argues that the district court improperly dissolved the preliminary injunction because Pall's asserted invalidity defenses involving the Sumitomo references lack substantial merit. We have reviewed each of the parties' contentions regarding the propriety of the district court's finding that the Sumitomo references raise a substantial question regarding the validity of claim 1 of the '907 patent and claim 3 of the '770 patent in light of the court's preliminary constructions of those claims, which neither party challenges in this appeal. Based on that claim construction, the parties each presented the district court with their assertions, supported with credible expert testimony and argument, regarding the teachings of the Sumitomo references.

With respect to claim 1 of the '907 patent, the district court found that the Sumitomo references "appear to contain all of the elements and limitations of claim 1." Mykrolis Corp., No. 03-10392, 2005 U.S. Dist. LEXIS 518, at *14. Mykrolis argues that the Sumitomo references fail to disclose the claimed "means for positioning." The district court, however, found that this limitation was met by the guide and guide rabbet which together position and align the inlet and outlet ports of the humidifier in the Sumitomo references. This preliminary factual finding is not clearly erroneous. Jack Guttman, Inc. v. Kopykake Enters., Inc., 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("Hence, in reviewing a district court's decision on a motion for a preliminary injunction, we remain 'mindful that all findings of fact and conclusions of law at the preliminary

injunction stage are subject to change upon the ultimate trial on the merits.'" (internal citation omitted)); see also Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1377 (Fed. Cir. 2005) (recognizing same for preliminary claim constructions).

With respect to claim 3 of the '770 patent, Mykrolis argues that the district court erred in its application of the obviousness analysis and therefore mistakenly found that there are substantial questions regarding the validity of the claimed invention when "consider[ing] the Sumitomo references alone or in combination with fluid filtration devices like the Ogden patent." Mykrolis Corp., No. 03-10392, 2005 U.S. Dist. LEXIS 518, at *18. Specifically, Mykrolis challenges whether the Sumitomo references, which relate to humidifier-oxygen devices, are analogous prior art. The district court concluded that the Sumitomo references are analogous prior art because they were "essentially directed to the same problem—connecting a fluid processing module in fluid tight engagement with a feeding source, while permitting quick and easy change-out of the fluid processing module." See id., at *17. Again, Mykrolis has failed to establish that the district court's analysis regarding the issue of invalidity included a clear legal error or clearly erroneous factual determinations. See Canon Computer Sys., 134 F.3d at 1087-88.

We conclude that Pall has asserted an invalidity defense that Mykrolis has not proved "lacks substantial merit." Genentech, 108 F.3d at 1364. Therefore, the district court did not abuse its discretion in dissolving the preliminary injunction in light of the substantial invalidity question raised by the Sumitomo references.

CONCLUSION

Because we do not have jurisdiction over Pall's appeal of the district court's contempt order, we dismiss that portion of the appeal. With respect to Mykrolis' cross-appeal, we hold that the district court did not abuse its discretion in dissolving the preliminary injunction based upon the substantial question of invalidity of the asserted patents raised by the defendant. Accordingly, we affirm that portion of the district court's decision.

2004-1440, 2005-1266,2006-1374: <u>DISMISSED</u>; 2005-1265: <u>AFFIRMED</u>

Each party shall bear its own costs.