# United States Court of Appeals for the Federal Circuit

_____

**AEVOE CORP.,**
*Plaintiff-Appellee,*

v.

**AE TECH CO., LTD., S&F CORPORATION (doing business as SF Planet Company and SF Planet Corporation), AND GREATSHIELD, INC.,**
*Defendants-Appellants.*

_____

2012-1422

_____

Appeal from the United States District Court for the District of Nevada in No. 12-CV-0053, Judge Gloria M. Navarro.

_____

Decided: August 29, 2013

_____

DAVID SPENCER BLOCH, Winston & Strawn LLP, of San Francisco, California and STEFFEN N. JOHNSON, of Washington, DC, argued for plaintiff-appellee. With them on the brief were JENNIFER A. GOLINVEAUX, K. JOON OH and ELISABETH A. DERBY, of San Francisco, California.

LYNN J. ALSTADT, Buchanan Ingersoll & Rooney PC, of Pittsburgh, Pennsylvania, argued for defendants-appellants. With him on the brief was STEVEN D. CZAJKOWSKI.

_____

Before RADER, *Chief Judge,* LOURIE, and O'MALLEY, *Circuit Judges.*

O'MALLEY*, Circuit Judge.*

AE Tech Co., Ltd. ("AE Tech"), S&F Corporation, and GreatShield, Inc.[1] appeal the district court's preliminary injunction granted in favor of Aevoe Corporation ("Aevoe") barring particular products from the market. The district court originally granted the injunction in January 2012. AE Tech did not appeal from that order. In May 2012, the district court concluded that the Appellants had violated the injunction with an alleged redesign. At that time, the court altered certain language in the injunction. Appellants now argue that the court modified the injunction in May 2012 and that their appeal from that modification is timely. Because the district court merely clarified the scope of the original injunction in its May 2012 order, we find there was no modification that substantially changed the legal relationship between the parties. Based on this finding, we *dismiss* this appeal for lack of jurisdiction.

## I. BACKGROUND

Aevoe is the assignee of U.S. Patent No. 8,044,942 ("the '942 patent"), which is directed to a touch screen protector for electronic devices. The '942 patent generally discloses a touch screen protector for use on hand-held electronic devices that can be easily attached and removed without trapping air bubbles or dust. '942 patent, col. 1, ll. 10–55. The claimed touch screen protector includes a plastic film and a spacer. *Id.*, col. 8, ll. 28–48. The spacer surrounds the thin plastic film and is sized to fit the particular device. The spacer must be thick enough to ensure that the plastic film does not make direct contact with the hand-held device screen, but thin enough

---

[1]   S&F Corporation and GreatShield, Inc. together will be referred to as the "S&F Defendants."

such that a user can still easily make contact with the touch screen when pressing down on the film. *Id.* The spacer also includes an adhesive to allow the protector to be attached to and removed from the device. *Id.* A preferred embodiment is depicted in the '942 patent:



FIG. 1C

*Id.*, Fig. 1C. The '942 patent has one independent claim and fourteen (14) dependent claims. Claim 1 is the sole independent claim:

> 1. A touch screen protector for a hand held electronic device having a front face that includes a touch screen portion and an outer perimeter comprising:
>
> a plastic film having front and back sides, an outer perimeter that corresponds to that of the device, and a transparent window that corresponds in size to the touch screen portion; and
>
> a spacer provided along the outer perimeter of the plastic film continuously surrounding the transparent window, having a thickness sufficient to space the plastic film near but not in contact with the touch screen portion, and an exposed adhesive for removably mounting the protector upon the outer perimeter of the front face to form an enclosed air space between the transparent window

of the plastic film, the spacer and the touch screen portion of the device;

wherein the window can be pressed against the touch screen portion for operation of the electronic device while preventing direct contact of a user's fingers with the touch screen portion and without producing visible interference patterns during use.

*Id.*, col. 8, ll. 28–48.

On December 7, 2011, Aevoe sued AE Tech in the District Court for the Northern District of California, alleging that AE Tech's touch screen products, including its APlus Shield Anti-Glare product, infringed the '942 patent. *See Aevoe Corp. v. AE Tech Co.*, 5:11-cv-6164, ECF No. 1 (N.D. Cal. Dec. 7, 2011).[2] Before AE Tech responded to the California action, Aevoe learned that AE Tech was marketing the allegedly infringing touch screen products in Las Vegas at the Consumer Electronics Show. Aevoe subsequently filed a separate suit in the District Court for the District of Nevada, alleging that AE Tech was infringing the '942 patent. *See Aevoe Corp. v. AE Tech. Co.*, 2:12-cv-53, ECF No. 1 (D. Nev. Jan. 1, 2012). There, Aevoe requested a temporary restraining order, which the district court granted, barring AE Tech from selling its ACase and APlus Shield Anti-Glare products. *See Aevoe Corp.*, ECF No. 8 (D. Nev. Jan. 12, 2012). The court also ordered that AE Tech show cause why a preliminary injunction should not issue. *Id.* Despite receiving notice of the restraining and show cause orders, AE Tech did not answer the complaint, respond, or appear.

After AE Tech failed to respond to the show cause order, the district court issued a preliminary injunction:

---

[2]    Aevoe voluntarily dismissed its California suit on January 25, 2012. *See Aevoe Corp. v. AE Tech Co.*, 5:11-cv-6164, ECF No. 7 (N.D. Cal. Jan. 25, 2012).

> IT IS HEREBY ORDERED THAT AE Tech, its agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, or having knowledge of this Order by personal service or otherwise be, and hereby are, preliminarily enjoined from practicing, making, manufacturing, importing, offering for sale, selling, and/or otherwise using U.S. Patent No. 8,044,942, or any reproduction, counterfeit, copy, or colorable imitation of the same, and from transferring, moving, returning, destroying, or otherwise disposing of any [AE Tech touchscreen protectors that meet the '942 patent claim limitations], including but not limited to ACase APlus Shield Anti-Glare products pending a trial on the merits, AE Tech is hereby given further notice that it shall be deemed to have actual notice of the issuance and terms of this preliminary injunction and that any act by it in violation of any of the terms hereof may be considered and prosecuted as contempt of this Court.

*Aevoe Corp.*, ECF No. 16 (D. Nev. Jan. 24, 2012). The preliminary injunction finally prompted AE Tech to respond. On February 7, 2012, AE Tech filed a motion to reconsider and vacate the preliminary injunction. *See Aevoe Corp.*, ECF No. 25 (D. Nev. Feb. 7, 2012). AE Tech contested the grant of the preliminary injunction. *Id.* It argued, among other things, that Aevoe was unlikely to succeed on the merits because the '942 patent was invalid and unenforceable. *Id.* AE Tech also contended that the preliminary injunction was overbroad because it used trademark-related words such as "counterfeit" and "colorable imitation," that broadened the reach of the injunction beyond the scope of the patent claims. *Id.*

The district court treated AE Tech's motion as a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). *See Aevoe Corp.*, ECF No. 43 (D. Nev. March 7, 2012). In the Ninth Circuit, a Rule 59(e) motion

may be granted if: (1) the motion is necessary to correct manifest errors of law or fact upon which the appealable order is based; (2) the moving party presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an intervening change of law. *See Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citations omitted).

As such, the court analyzed whether it had committed clear error in its application of the criteria for determining whether to grant a preliminary injunction, i.e., likelihood of success on the merits, irreparable injury, balance of hardships, and the public interest. *See Aevoe Corp.*, ECF No. 43 (D. Nev. March 7, 2012). The district court noted that AE Tech had waived the right to assert invalidity defenses to Aevoe's request for a preliminary injunction by not asserting them when given a full and fair opportunity to do so, and that there was no intervening change in controlling law. The court then concluded that it had not committed clear error, denied AE Tech's motion to reconsider, and refused to vacate the injunction. *Id.* The court, however, noted that Aevoe did not oppose AE Tech's request to remove the "counterfeit" and "colorable imitation" language from the injunction to clarify that the injunction is no broader than permitted under 35 U.S.C. § 271. *Id.*

After the hearing on AE Tech's motion for reconsideration, on March 5, 2012, AE Tech informed Aevoe that it had redesigned its product and was "intending" to sell the new product with the help of and through the S&F Defendants. AE Tech's redesign consisted of cutting two "channels" through the mounting adhesive of the accused devices. Aevoe was able to confirm, however, that AE Tech began selling the "redesigned" product before the March 5 notice, that AE Tech was in fact doing so through the S&F Defendants, and was doing so using the same product packaging and identification numbers used for the original allegedly infringing devices. Two days later,

on March 7, 2012, the district court issued an order altering the January 24, 2012 injunction as requested by AE Tech to remove the "trademark language" (words in brackets were added by the district court):

> IT IS HEREBY ORDERED THAT AE Tech, its agents, servants, employees, confederates, attorneys, and any ~~persons~~ [person] acting in concert or participation with them, or having knowledge of this Order by personal service or otherwise be, and hereby are~~, preliminarily enjoined~~ [preliminary enjoyed (sic)] from ~~practicing,~~ making, [using,] manufacturing, importing, offering for sale, selling, and/or otherwise using U.S. Patent No. 8,044,942, ~~or any reproduction, counterfeit, copy, or colorable imitation of the same,~~ and from transferring, moving, returning, destroying, or otherwise disposing of any [AE Tech touch-screen protectors that meet the '942 patent claim limitations], including but not limited to ACase APlus Shield Anti-Glare products pending a trial on the merits[.]~~, AE Tech is hereby given further notice that it shall be deemed to have actual notice of the issuance and terms of this preliminary injunction and that any act by it in violation of any of the terms hereof may be considered and prosecuted as contempt of this Court.~~

*Id.* AE Tech did not appeal this decision.

On March 14, 2012, Aevoe filed an amended complaint joining the S&F Defendants. *See Aevoe Corp.*, ECF No. 44 (D. Nev. March 14, 2012). Aevoe previously had notified the S&F Defendants of the preliminary injunction, but now sought to join them as defendants. Aevoe alleged—supported by written confirmation—that the S&F Defendants sold infringing products obtained from AE Tech. *Id.* Shortly thereafter, Aevoe filed a motion requesting that AE Tech and the S&F Defendants be held in contempt and sanctioned for willfully disregarding the

court's preliminary injunction. *See Aevoe Corp.*, ECF No. 49 (D. Nev. March 23, 2012).

After examining the redesigned AE Tech product, the district court found that the added channels were a nonfunctional and trivial attempt to design around the '942 patent. *See Aevoe Corp.*, ECF No. 65 (D. Nev. May 2, 2012). The court found that the redesigned AE Tech screen protector was not more than colorably different than the enjoined products. *Id.* Accordingly, the court held all defendants in contempt and concluded that sanctions against AE Tech were appropriate.[3] *Id.* The court also changed the language of the preliminary injunction by adding back the "colorable imitation" phrase. *See Aevoe Corp.*, ECF No. 66 (D. Nev. May 2, 2012). The court also explicitly named the S&F Defendants as enjoined parties. *Id.* The injunction was altered as follows (words in brackets were added by the district court):

> IT IS HEREBY ORDERED ~~THAT~~ [that] AE Tech~~,~~ ~~its~~ [Co., Ltd., GreatShield, Inc., S&F Corporation, their] agents, servants, employees, confederates, attorneys, and any ~~person~~[persons] acting in concert or participation with them, or having knowledge of this Order by personal service or otherwise be, and hereby are ~~preliminary enjoyed~~[preliminarily enjoined] from [practicing,] making, ~~using,~~ manufacturing, importing, offering for sale, selling, and/or otherwise using U.S. Patent No. 8,044,942[, or a colorable imitation of the same], and from transferring, moving, returning, destroying, or otherwise disposing of any Infringing Goods, including[,] but not limited to[,] ACase

---

[3] The court concluded that, while the S&F Defendants were subject to and had violated the injunction, sanctions against those defendants were not appropriate because they were not named parties at the time of the contempt. *See* Joint Appendix at 195–97.

> APlus Shield Anti-Glare products[, original and redesigned, and the GreatShield EZseal Plus 100% Bubble Free Screen Protector,] pending a trial on the merits.

*Id.* The district court deferred consideration of the measure of sanctions to be imposed on AE Tech pending discovery regarding the scope of its sales of the redesigned product. AE Tech then filed this appeal.

## II. DISCUSSION

"It is axiomatic that the initial inquiry in any appeal is whether the court to which appeal is taken has jurisdiction to hear the appeal." *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting *Woodward v. Sage Prods., Inc.*, 818 F.2d 841, 844 (Fed. Cir. 1987)). We are therefore obligated to determine whether we have jurisdiction over this appeal.

The substance of Appellants' briefing focuses on the merits of the district court's contempt order, not its grant of the preliminary injunction. For example, while Appellants contest the infringement and claim construction findings contained in the district court's contempt order, it is clear that the court made those findings in the order holding AE Tech and the S&F Defendants in contempt for *violation* of the injunction. A contempt order interpreting or enforcing an injunction, however, is generally not appealable until final judgment. *Id.* at 1344–48; *see also S.E.C. v. Hickey*, 322 F.3d 1123, 1127 (9th Cir. 2003) ("Orders of civil contempt entered against a party during the course of a pending civil action are not appealable until final judgment."). This is particularly so where no sanction had yet been imposed for that contempt and proceedings with respect to that question remained ongoing at the time the appeal before us was filed. Our focus will remain on the injunction, therefore, and not the district court's contempt order.

AE Tech and the S&F Defendants contend that the district court erred in its May 2, 2012 order expressly

enjoining the sale of AE Tech's "redesigned" screen protector—including the GreatShield EZseal—and that we have jurisdiction over that interlocutory order under 28 U.S.C. § 1292(a)(1). The district court, however, issued its original preliminary injunction on January 24, 2012, and AE Tech did not appeal the injunction until May 2012. Under Federal Rule of Appellate Procedure 4(a)(1), any appeal was to have been filed within thirty (30) days of the court's grant of the original January injunction. Fed. R. App. P. 4(a)(1) ("In a civil case . . . the notice of appeal . . . must be filed with the district clerk within 30 days after entry of judgment or order appealed from."). Despite the passage of well more than thirty (30) days, however, AE Tech argues that its appeal is timely because the district court modified the January injunction or granted a new injunction in May 2012; AE Tech claims that its interlocutory appeal derives from the modification, and not the original order from which it unquestionably did not appeal. The S&F Defendants also argue that their right to appeal flows from the May 2012 order because the injunction did not identify them by name until that order. We disagree on both points.[4]

---

[4]    Aevoe previously moved to dismiss this appeal asserting that this court does not have jurisdiction under 28 U.S.C. § 1292(a)(1) because the district court did not modify the preliminary injunction. Given the limited record at that stage of the proceedings, that motion was denied. After a review of the complete record on appeal and with the added benefit of oral argument, we agree that the district court did not, in fact, modify the preliminary injunction issued in January 2012. Because the district court merely clarified its original injunction, it is clear that AE Tech's appeal actually is directed at the ruling finding it in contempt of the original injunction, a ruling over which we do not have jurisdiction at this point in time.

This court applies its "own law and not the law of the regional circuit to issues concerning our jurisdiction." *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed. Cir. 2003); *see also Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1330 (Fed. Cir. 2007) ("We apply our own law, rather than regional circuit law, to questions relating to our own appellate jurisdiction."). The grant, denial, or modification of a preliminary injunction, however, is not unique to patent law, so this court applies the law of the regional circuit when reviewing and interpreting such a decision. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1367 (Fed. Cir. 2008) (citing *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 164 F.3d 891, 894 (Fed. Cir. 1998)). Accordingly, we apply the law of the regional circuit to determine whether an injunction has been modified. If the injunction has been modified under regional circuit law, we may then exercise appellate jurisdiction under 28 U.S.C. §§ 1292(c) and (a). *See Entegris Inc.*, 490 F.3d at 1344–45.

We therefore apply Ninth Circuit law, which states that "[w]hether an order modifies an existing injunction rather than merely interprets it depends on whether it substantially alters the legal relations of the parties." *Cunningham v. David Special Commitment Ctr.*, 158 F.3d 1035, 1037 (9th Cir. 1998) (citing *Public Serv. Co. of Colorado v. Batt*, 67 F.3d 234, 236–37 (9th Cir. 1995)). Determination of whether an order alters the legal relationship between the parties requires viewing the substance of the order. *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124–25 (9th Cir. 2005); *see also Entegris, Inc.*, 490 F.3d at 1344–45.

The district court twice altered the language of the injunction, once in March and again in May 2012. To understand how the injunction language evolved, we analyze each iteration to determine whether any of the changes actually altered the legal relationship between the parties. The January 2012 injunction was directed at AE Tech, any person acting in concert or participation

with AE Tech, or any person having knowledge of the order. The injunction barred those parties from "practicing, making, manufacturing, importing, offering for sale, selling, and/or otherwise using" the '942 patent, or any counterfeit or colorable imitation of the same. *Aevoe Corp.*, ECF No. 16 (D. Nev. Jan. 24, 2012).

When AE Tech finally appeared in this case and requested that the district court reconsider the grant of the injunction, it argued that the words "counterfeit" and "colorable imitation" were only appropriate when enforcing trademark rights, not patent rights. *See Aevoe Corp.*, ECF No. 43 (D. Nev. March 7, 2012). Based on that reasoning, Aevoe did not oppose the request to remove this language, and the district court excised that language from the injunction with the understanding that it was irrelevant trademark language. *Id.* After the contempt hearing, the district court again altered the language of the injunction. The district court reinserted the "colorable imitation" language, included reference to the redesigned GreatShield product in the injunction, and explicitly added the S&F Defendants as enjoined parties. The operative question, therefore, is whether these changes amounted to a modification of the original injunction which, in effect, would reset the time for appeal of the injunction. We address each issue in turn.

First, we must determine whether we have jurisdiction over AE Tech's appeal. That inquiry requires us to consider whether the district court modified the injunction as to AE Tech by reinserting the "colorable imitation" language after finding the defendants in contempt and explicitly adding the GreatShield "redesign" to the injunction. AE Tech appears to have been disingenuous, at best, when it argued for removal of the subject language during the February 2012 hearing while failing to inform the court that it already had redesigned the allegedly infringing touch screen protector. Motivations aside, however, for reasons explained below, we find that the removal and return of that language effected no substantive change

and did not alter the legal relationship between the parties. For the same reasons, moreover, we find that an express reference to the redesign had no substantive effect on the scope of the injunction.

As this court held in *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc), when determining whether a redesigned product falls under the strictures of an existing injunction, the primary question is whether the "new" product is "colorably different" from the old product. 646 F.3d at 882. In other words, whether a redesigned product is "colorably different" from, or a "colorable imitation" of, the previously enjoined products is directly relevant to the contempt standard in patent law. While AE Tech convinced the district court to excise that language, along with the "counterfeit" language, the legal relationship between the parties did not change. Put simply, whether "colorable imitations" were explicitly mentioned in the injunction language or not, such imitations fell within its scope; the district court was obligated to apply the colorable differences test in the contempt proceeding. *See id.* at 882–83. Thus, the legal relationship between the parties was in no way altered by the court's changes to the injunction language. Neither the excision and addition of the "colorable imitation" language nor the explicit description of the actual redesign amount to a modification of the preliminary injunction upon which this court could predicate jurisdiction.

"[T]he distinction between an order interpreting an injunction and one modifying an injunction is not always clear, [but it] defines the boundary of appellate jurisdiction under" § 1292. *Entegris*, 490 F.3d at 1345 (quoting *Motorola, Inc. v. Computer Displays, Int'l, Inc.*, 739 F.2d 1149, 1155 (7th Cir. 1984)). At AE Tech's urging, the district court first clarified that the preliminary injunction was meant to only bar activities described in 35 U.S.C. § 271. Later, the district court further clarified the scope of the injunction by describing the redesigned product by name. The district court also, in response to

AE Tech's earlier behavior, reinserted the "colorable imitation" language to make clear the implicit principle that products that are no more than "colorably different" than the enjoined products also fall within the purview of an injunction against infringing activity under § 271. None of these changes, however, altered the legal relationship between the parties. *See Cunningham*, 158 F.3d at 1037. As such, the district court never modified the injunction such that it would reset AE Tech's time to appeal, and, therefore, AE Tech's appeal is untimely.

Because the district court did not substantively modify the January 2012 injunction, AE Tech's appeal derives from a contempt order which is not an appealable interlocutory order. *Entegris, Inc.*, 490 F.3d at 1343. Because the contempt order is not appealable under 28 U.S.C. § 1292(a), this court does not have jurisdiction over AE Tech's appeal.[5]

We next consider whether the addition of the S&F Defendants amounted to a modification of the injunction, or, in other words, whether it altered substantially the legal relationship between those parties and Aevoe such that the S&F Defendants may now appeal the injunction, even if AE Tech may not. *Cunningham*, 158 F.3d at 1037. Though the S&F Defendants were not joined as defendants until March 2012, they had notice of the injunction within a week of its original issuance in January. On February 3, 2012, the S&F Defendants: (1) were again made aware of the injunction; (2) confirmed that they were distributing products made by AE Tech; and (3) represented that they would not sell the infringing products anymore. *See Aevoe Corp. v. AE Tech. Co., Ltd.*,

---

[5] This court reached the same conclusion on similar facts in a recent, albeit non-precedential, decision. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 504 F. App'x. 900 (Fed. Cir. 2013).

12-1422, Mtn. to Dismiss, ECF No. 15, Ex. 18 (Fed Cir. June 15, 2012). It is beyond debate that the S&F Defendants thus fell within the express language of the original injunction, whether or not they were explicitly named as enjoined parties. The injunction as issued in January 2012 was directed to AE Tech or any party that had notice of the injunction and was selling the barred products. Thus, the addition of the S&F Defendants as explicitly enjoined parties did not substantively modify the language of the preliminary injunction because they were already barred—on the face of the injunction—from selling the products.

Whether it does so expressly or not, however, a court generally may not enjoin a non-party to the action before it. *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394-95 (Fed. Cir. 1996) (citing *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930)). A party who acts in concert with an enjoined party, however, may be subject to the strictures of an injunction. *See Alemite*, 42 F.2d at 833. These common law principles are codified in Rule 65(d)(2)(C), which provides that an injunction binds "other persons who are in active concert or participation with [the parties]." FED. R. CIV. P. 65(d)(2)(C). "Active concert or participation" has been interpreted to include both aiders and abettors of, and privies of, an enjoined party. *See Golden State Bottling Co., v. NLRB*, 414 U.S. 168, 179-80 (1973) (citing *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1930)); *Additive Controls*, 96 F.3d at 1395; *Rockwell Graphics Sys., Inc. v. Dev Indus., Inc.*, 91 F.3d 914, 919-20 (7th Cir. 1996). Such interpretations of "active concert or participation" recognize "that the objectives of an injunction may be thwarted by the conduct of parties not specifically named in its text." *Rockwell Graphics*, 91 F.3d at 920.

We find that the S&F Defendants fell within the purview of the original injunction because they were "acting in concert" with AE Tech in connection with the resale of

the redesigned products. Failure to enjoin their conduct would thwart the purposes of that injunction.

AE Tech sold its allegedly infringing products directly to the S&F Defendants for distribution who, in turn, sold the AE Tech products in the marketplace. At the time of those transactions, the S&F Defendants had notice of the injunction, had been apprised of which products were enjoined, and informed Aevoe that they obtained the barred products solely from AE Tech. *See Aevoe Corp. v. AE Tech Co., Ltd.*, 12-1422, Mtn. to Dismiss, ECF No. 15, Ex. 18 (Fed. Cir. June 15, 2012). The S&F Defendants did not obtain the redesigned product from any entity other than AE Tech and AE Tech did not distribute those products through any other entity. Accordingly, by virtue of their distribution agreement, the S&F Defendants were "privies" of AE Tech, did not act independently of AE Tech, and were, thus, subject to the original injunction. *See Golden State Bottling Co.* 414 U.S. at 179 (stating that a purchaser acquiring property with knowledge that the wrong enjoined remained unremedied is considered in privity for purposes of Rule 65(d)).[6]

For these reasons, the addition of the S&F Defendants also only clarified, and did not modify, the original injunction because they always fell within the restrictions of the original injunction. The district court did not substantially alter the legal relationship between the

---

[6]   We note that the S&F Defendants advanced the same arguments as AE Tech both in the district court and on appeal. As such, the S&F Defendants' contention that they were deprived of an opportunity to present an independent validity challenge at the district court rings hollow. It is telling, moreover, that the S&F Defendants never argued that their express inclusion in the May 2012 order constituted a modification of the injunction in their response to Aevoe's motion to dismiss and only do so in passing in their merits briefs.

parties by explicitly naming the S&F Defendants as enjoined parties. We conclude, accordingly, that we also do not have jurisdiction over the S&F Defendants' appeal at this time.

**DISMISSED**